PHIL KLEIN, Appellant, v. AMERICAN LUGGAGE WORKS, INC., Appellee.

(*March* 17, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*David Snellenburg, II*, (of the firm of Killoran and Van Brunt) for defendant below, appellant.

*Ernest S. Wilson, Jr.*, (of the firm of Morford, Young and Conaway) for plaintiff below, appellee.

Supreme Court of the State of Delaware, No. 62, 1959.

BRAMHALL, J.:

On August 14, 1956, plaintiff brought suit against defendant for $3,751.61 for goods sold and delivered by plaintiff, a luggage manufacturer, to defendant, a "discount house", in the City of Wilmington. Defendant admitted the sale and delivery but asserted in defense that the goods were deficient in quality. He also filed a counterclaim based upon an alleged agreement that defendant should have the exclusive right to sell plaintiff's luggage in the *State of Delaware*.

On November 20, 1956, defendant filed a second counterclaim, in which he contended that he had elected to rescind the sale of the luggage and had offered to return it. On February 13, 1957, a pre-trial order was entered in the Superior Court to the effect that plaintiff was entitled to judgment in the sum

of $3.751.61, with interest, except as to whatever extent plaintiff's recovery might be extinguished by defendant's counterclaim.

At the first trial on April 18, 1957, a verdict for plaintiff in the sum of $4,019.11 was directed. The basis of the Court's order was that defendant had elected rescission as his remedy and the notice of rescission was not timely as a matter of law. A motion for a new trial was granted on the ground that defendant had misconceived his remedy and should be permitted to amend his answer to permit him to present a remedy other than rescission. On November 21, 1957, defendant filed his second amended answer, asserting an exclusive dealer's contract by way of extinction or diminution of the purchase price. In this answer, defendant alleged an exclusive dealer's contract within the *City of Wilmington*, reflecting defendant's testimony at the trial. A motion for summary judgment was filed by plaintiff on the ground that the amended answer failed to allege a breach of that contract.

On January 13, 1958, defendant in answer to said motion filed an affidavit in which it was alleged, for the first time, that plaintiff and defendant had orally agreed that plaintiff would fill all of defendant's orders for luggage on a requirement basis. Defendant did not state, or even attempt to estimate, what such requirements would be. No explanation was made as to why such a contract had not been mentioned previously. Nevertheless, upon the basis of this affidavit, the Court below denied plaintiff's motion for summary judgment.

When the case came to trial for the second time on November 17, 1958, the trial court again directed a verdict for plaintiff upon the ground that defendant's notice to plaintiff of his intention to hold plaintiff liable in damages for breach of the requirements contract was insufficient. Defendant's motion for a new trial was denied. Defendant then appealed to this Court from the denial of his motion for a new trial.

Under the opinion of this Court in the case of *Trowell v. Diamond Supply Company*, 8 *Terry* 422, 91 *A.* 2d 797, defendant's appeal is necessarily limited to the question of whether or not the trial court in refusing to grant defendant's motion for a new trial was guilty of an abuse of discretion. Defendant concedes that this is so.

Defendant contends that no notice of defendant's claim against plaintiff by reason of the alleged requirements contract was necessary. It is further alleged that plaintiff through his salesman waived the untimeliness and form of the notice. Defendant claims that in any event plaintiff received sufficient notice.

Both plaintiff and defendant have tried this case at both trials as one involving an alleged breach of warranty based upon 6 *Del. C.* 1953, § 711(a), providing, in substance, that the injured party may treat the non-performance of any condition in the contract as a breach of warranty. It was so treated by the trial court in both trials. It was briefed and argued upon this basis before this Court. We therefore consider this case in the manner in which it was presented to us and do not pass upon any question which might arise as to whether defendant's contention in law constituted a breach of warranty.

Was defendant required to give notice to plaintiff of plaintiff's breach of the alleged requirements contract?

Defendant's right of action is now based solely upon the alleged requirements contract for the loss which defendant is alleged to have sustained to the stock which he purchased from plaintiff because of plaintiff's refusal to make future deliveries in accordance with this contract. As we understand defendant's contention, defendant says that 6 *Del. C.* 1953, § 749, Laws of Delaware, relating to notice, applies only to those cases involving a defect of quantity, quality, lack of conformity to sample, failure to comply with description or some other circumstance causing money damage to the buyer, or a failure to deliver on time.

Defendant cites the cases of *Maxwell Co. v. Southern Oregon Gas Corp.*, 158 *Or.* 168, 74 *P.* 2d 594, 75 *P.* 2d 9, 114, *A. L. R.* 697, 706; *O'Connor v. Tesdale*, 34 *Wash.* 2d 259, 209 *P.* 2d 274, and *Knoxville Sangravel Material Co. v. Dunn*, 25 *Tenn. App.* 93, 151 *S. W.* 2d 174, as authority for the statement in defendant's brief that § 749 is not applicable in the case of a breach of warranty of title. Defendant cites the case of *Zahn v. Gulf Oil Corp.*, 204 *Misc.* 678, 125 *N. Y. S.* 2d 55, as authority for defendant's contention that notice is not required in the case of "short weight" or "overpayment". Presumably, defendant considers that these cases are in some manner analogous to the present case.

6 *Del. C.* 1953, § 749, which is the same as § 49 of the Uniform Sales Act, is as follows:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for the breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

The purpose of § 49 of the Uniform Sales Act and of § 749 of the similar statute in this State was to ameliorate the harshness of the common law rule that mere acceptance on the part of the buyer of title to the property in question constituted a waiver of any remedies for a breach of warranty on the part of the buyer and, at the same time, to give to the seller some protection against stale claims by requiring prompt notice of such claim. *Hazelton v. First National Stores*, 88 *N. H.* 409, 190 *A.* 280; *American Mfg. Co. v. United States Shipping Board Emergency Fleet Corp.*, 2 *Cir.*, 7 *F.* 2d 565; *Texas Motorcoaches v. A. C. F. Motors Co.*, 3 *Cir.*, 154 *F.* 2d 91.

 We agree that in most of the cases involving an interpretation of § 49 of the Uniform Sales Act, or the equivalent section in the different states, the question involved is a breach of warranty relating to the quantity or quality of the articles sold, but in our opinion this section is not limited. to such purposes. *American Mfg. Co. v. United States Shipping Board Emergency Fleet Corp., supra; Trimount Lumber Co. v. Murdough*, 229 *Mass.* 254, 118 *N. E.* 280; *Wildman Mfg. Co. v. Davenport Hosiery Mills*, 147 *Tenn.* 551, 249 *S. W.* 984; *Whitfield v. Jessup*, 31 *Cal.* 2d 826, 193 *P.* 2d 1. See 3 *Williston on Sales* (Rev. Ed.), § 484(b). The langauge of this section is clear, and, we think, is not open to construction. It is specifically stated therein that the section relates to *any* promise or warranty. It is also provided in this section that in the event of a failure on the part of the buyer to comply with this condition, he may not recover upon his counterclaim.

We do not pass upon the correctness of the decisions cited by defendant in his brief, although we might question some of the language therein limiting the application of this section. We think that these cases do not relate, even remotely, to the facts of the present case. In the cases cited by defendant the basis of the counterclaim filed was, or at least should have been, fully known to plaintiff, probably much better than to defendant. In the present case, it was only after the case had been tried the first time and while a motion for a new trial was pending, nearly two years later, that the contention as to the existence of a requirements contract was adverted to. Even then it was not disclosed for how long the contract was to be in effect or in any respect what defendant's requirements might be. It has been held in this State by the Superior Court in the case of *American Trading Co. v. National Fibre & Insulation Co.*, 1 *W. W. Harr.* 258, 114 *A.* 67, that such a contract would be void for lack of certainty and mutuality. We do not comment upon this question here except to say that if defendant was relying upon such an indefinite agreement, plaintiff was entitled to be notified

promptly by plaintiff of the existence of such a contract and plaintiff's breach thereof.

Defendant next contends that plaintiff waived any right which it may have had to notice. Defendants assert that the statement alleged to have been made to defendant by plaintiff's salesman that defendant wait until "after the show" before taking any steps as a result of such letter amounted to a waiver of notice. According to the testimony offered on behalf of defendant, plaintiff's salesman was informed that defendant would have to return the goods on hand as unsalable because of the fact that necessary replacements of stock could no longer be made but was dissuaded from doing so because of the statement by plaintiff's salesman.

Assuming that plaintiff's salesman had apparent authority to waive such a notice and accepting defendant's evidence in its most favorable light, not more than four or five months elapsed after receipt of the letter of termination dated February, 1956, before defendant was finally notified by plaintiff that the termination of business relations between them was final. According to plaintiff's contention, it was not more than three weeks. Plaintiff's first notice that defendant was alleging a counterclaim against plaintiff arising out of an alleged requirements contract came on or about January 13, 1958, nearly two years after the receipt of the letter of termination, when defendant filed his affidavit alleging that such a contract existed between plaintiff and defendant and that defendant's counterclaim was bottomed upon its breach by plaintiff.

Waiver is the voluntary relinquishment of a known right or conduct such as to warrant an inference to that effect. *Nathan Miller, Inc. v. Northern Ins. Co. of New York*, 3 *Terry* 523, 39 *A.* 2d 23, 25; *Hanson v. Fidelity Mut. Ben. Corp.*, 1 *Terry* 467, 13 *A.* 2d 456, 459. It implies knowledge of all material facts and of one's rights, together with a willingness to refrain from enforcing those rights. *Hanson v. Fidelity Mut. Ben. Corp.*,

*supra.* In this case, when defendant made his objection to plaintiff's salesman, neither plaintiff nor his salesman had been notified by defendant that defendant's allegation of a breach of warranty was bottomed upon an alleged requirements contract between plaintiff and defendant. In fact, as heretofore stated, plaintiff was not advised by defendant of the existence of such a counterclaim until long after the institution of suit by plaintiff against defendant and even after a trial in which defendant's counterclaim was based upon an alleged rescission of the contract by defendant. It is obvious that one cannot waive that of which he had no knowledge at the time of the alleged waiver. It is also clear that even if the statement of plaintiff's salesman to defendant to wait "until the show" should be construed as a waiver of some sort, it did not, and could not, amount to a waiver of notice of a breach of an alleged requirements contract, concerning which plaintiff had received no notice and of which he presumably had no knowledge.

Defendant asserts that he gave to plaintiff sufficient notice of plaintiff's breach of contract. We do not agree. The only notice given by defendant to plaintiff after the receipt by defendant of the letter from plaintiff was a remonstrance to plaintiff's salesman and the reply from the salesman to defendant to wait "until the show". Assuming the authority of the salesman in the premises and further assuming that there was a breach of contract on the part of plaintiff, defendant failed to prove a proper and sufficient notice, as required by § 749, within a reasonable time after the alleged breach. As previously stated, defendant's claim is now based solely upon an alleged breach of a rather indefinite requirements contract, of the existence of which defendant gave no notice to plaintiff until nearly two years after the receipt of the letter of termination from plaintiff. Defendant's remonstrance after the receipt of plaintiff's letter of termination did not in any sense comply with the requirements of the statute as to notice or with its purposes. *Fairbanks, Morse & Co. v. Consolidated Fisheries,*

*D. C. Del.,* 94 *F. Supp.* 311; *Barni v. Kutner, 6 Terry* (45 *Del.*) 550, 76 *A.* 2d 801; *Texas Motorcoaches v. A. C. F. Motor Co., supra.* While notice of breach of warranty need not necessarily take the form of an express claim for damages, it must refer to the particular sales, must fairly advise the seller of any alleged defects and must specify with reasonable particularity of what the breach consisted and repel any inference of a waiver. *Idzykowski v. Jordan Marsh Co.,* 279 *Mass.* 163, 181 *N. E.* 172; *Mead v. Coca Cola Bottling Co.,* 329 *Mass.* 440, 108 *N. E.* 2d 757; *Texas Motorcoaches v. A. C. F. Motor Co., supra.* See *Barni v. Kutner, supra.* We think that defendant's notice is a far cry from the notice required by the statute, namely, the existence of a requirements contract and defendant's damage by reason of plaintiff's violation thereof. The circumstances surrounding the giving of the notice and the person to whom it was given are undisputed and the inferences therefrom are clear. Under such circumstances the determination of the sufficiency of the notice becomes a matter of law for the trial court to decide. *Texas Motorcoaches v. A. C. F. Motor Co., supra; Idzykowski v. Jordan Marsh Co., supra.* We think that the trial judge was correct in his determination that sufficient notice of the requirements contract was not given.

The judgment of the Superior Court will be affirmed.